**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **KENT NG and SOPHIA NG,**<br>　　　**Plaintiffs,**<br><br>　　　v.<br><br>**PRUDENTIAL INSURANCE COMPANY OF AMERICA,**<br>　　　**Defendant/Third-Party Plaintiff,**<br><br>　　　v.<br><br>**CYNTHIA NG,**<br>　　　**Third-Party Defendant.** | **CIVIL ACTION**<br>**NO. 13-11317-TSH** |

**MEMORANDUM OF DECISION AND ORDER**
**March  24, 2016**

**HILLMAN, D.J.**

**Introduction**

　　　Kent Ng and Sophia Ng ("Kent" and "Sophia" or, collectively, "Plaintiffs") have filed an action against The Prudential Insurance Company of America ("Prudential") seeking a declaratory judgment that they are the rightful beneficiaries of Kin Fai Ng ("Kin," or "Insured") under a group life insurance policy issued to Xerox Corporation ("Xerox") pursuant to the Xerox Corporation Salaried Plan (G-9790).  That plan is a regulated employee benefit welfare plan under the Employee Retirement Income Security Act, 29 U.S.C. § 1001 *et seq*. ("ERISA").

Plaintiffs have also asserted claims against Prudential for breach of contract and breach of fiduciary duty.

Prudential has filed a third-party complaint against Cynthia Ng ("Cynthia"), who was married to Kin at the time of his death on January 10, 2010 and was originally named the beneficiary of Kin's life insurance policy. Prudential has determined that Cynthia was Kin's designated beneficiary at the time of his death and has deposited the full amount of the death benefit into an interest bearing account in her name. By its third-party complaint against Cynthia, Prudential seeks appropriate equitable relief from her pursuant to ERISA Section 502(a)(3), 29 U.S.C. §1132(a)(3), *i.e.*, reimbursement, should it be determined that that Plaintiffs are the proper beneficiaries of Kin's life insurance policy.

Prudential has filed a motion for summary judgment (*The Prudential Insurance Company Of America's Motion For Summary Judgment*, Docket No. 60) on Counts One ( ERISA Section 502(a)(1)(B) claim for benefits)  and Three (breach of fiduciary duty claim) of the Amended Complaint. As grounds Prudential asserts that Plaintiffs were not Kin's designated beneficiaries under the Plan because Kin never submitted a fully completed, signed form to Prudential naming them his beneficiaries, and on Count Three of the Amended Complaint (Plaintiffs' breach of fiduciary duty claim). Plaintiffs have filed a cross-motion for summary judgment (*Plaintiff's Motion For Summary Judgment*, Docket No. 63) on both claims asserting that they are Kin's designated beneficiaries under his life insurance policy and Prudential failed to pay them any benefit upon Kin's death, failed to provide them with a written notice of denial and right to appeal, and failed to provide them with copies of the Plan documents.[1]  Plaintiffs request that

---

[1] Neither party has addressed Count Two of Plaintiffs' Amended Complaint, *i.e.,* the breach of contract claim. I find that Plaintiffs have waived this claim by failing to address it on the merits. In any event, because Plaintiffs allege that Prudential breached a contract by failing to pay them Kin's death benefits, the claim relates to the Plan and is preempted by ERISA. *See Dulchinos v. Bay State Gas Co.*, 462 F. Supp. 2d 155, 159 (D. Mass.

they each be awarded attorneys' fees and costs 29 U.S.C. §1132(g)(1) and a per diem penalty of $110 per day as the result of Prudential's failure to provide them a copy of the ERISA Statement within thirty (30) days of their request for such information.[2]

## Standard of Review

### *Summary Judgment Standard*

Summary Judgment is appropriate where, "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Carroll v. Xerox Corp.*, 294 F.3d 231, 236 (1st Cir. 2002) (citing Fed. R. Civ. P. 56(c)). "'A "genuine" issue is one that could be resolved in favor of either party, and a "material fact" is one that has the potential of affecting the outcome of the case.'" *Sensing v. Outback Steakhouse of Florida, LLC*, 575 F.3d 145, 152 (1st Cir. 2009) (quoting *Calero-Cerezo v. U.S. Dep't. of Justice*, 355 F.3d 6, 19 (1st Cir. 2004)).

When considering a motion for summary judgment, the Court construes the record in the light most favorable to the nonmoving party and makes all reasonable inferences in favor thereof. *Sensing,* 575 F.3d at 153. The moving party bears the burden to demonstrate the absence of a genuine issue of material fact within the record. *Id.,* at 152. "'Once the moving party has pointed to the absence of adequate evidence supporting the nonmoving party's case,

---

2006)(citing *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 47, 107 S.Ct. 1549 (1987)). Therefore, summary judgment shall enter for Prudential on Count Two of the Amended Complaint..

[2] Prudential is entitled to summary judgment on Plaintiffs' claim for per diem damages pursuant to Section 1132(c) for failure to provide copies of the ERISA statement in a timely manner for the simple reason that Plaintiffs' Amended Complaint does not allege a claim for failure to provide Plan documentation and there are *no* factual assertions in the Amended Complaint to support such a claim. Moreover, the factual allegations contained in Plaintiffs' statement of undisputed facts are insufficient as a matter of law to establish that the Plaintiffs or an authorized representative requested the ERISA statement or other Plan documentation from Prudential *in writing* as required by 29 U.S.C. §1025.

the nonmoving party must come forward with facts that show a genuine issue for trial.'" *Id.* (citation to quoted case omitted). "'[T]he nonmoving party "may not rest upon mere allegations or denials of the [movant's] pleading, but must set forth specific facts showing that there is a genuine issue of material fact as to each issue upon which [s/he] would bear the ultimate burden of proof at trial." *Id.* (citation to quoted case omitted). The nonmoving party cannot rely on "conclusory allegations" or "improbable inferences". *Id.* (citation to quoted case omitted). "'The test is whether, as to each essential element, there is "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." ' " *Id.* (citation to quoted case omitted). "Cross-motions for summary judgment require the district court to 'consider each motion separately, drawing all inferences in favor of each non-moving party in turn.' " *Green Mountain Realty Corp. v. Leonard*, 750 F.3d 30, 38 (1st Cir. 2014)(citation to quoted case omitted).

"However, in an ERISA case where review is based only on the administrative record before the plan administrator and is an ultimate conclusion … to be drawn from the facts, summary judgment is simply a vehicle for deciding the issue. This means the non-moving party is not entitled to the usual inferences in its favor. When there is no dispute over plan interpretation, the use of summary judgment in this way is proper regardless of whether our review of the ERISA decision maker's decision is de novo or deferential. *Orndorf v. Paul Revere Life Ins. Co.*, 404 F.3d 510, 517 (1st Cir. 2005)(internal citations omitted).

## Facts

### *The Plan*

Kin was an employee of Xerox and was covered by a Xerox sponsored group life insurance plan, the Employee Term Life Coverage Plan, Group Contract No. X-09790 ("Plan"), which is a regulated employee benefit welfare plan governed by ERISA. The benefits provided

by the Plan are insured by Prudential through a group insurance contract ("Group Contract") issued to Xerox.  Prudential acts as the claim administrator for the Plan.  Prudential is given the discretion to interpret the Plan, and to administer and decide claims for benefits thereunder. More specifically, the Plan provides, in relevant part:

> The Prudential Insurance Company of America as Claims Administrator has the sole discretion to interpret the terms of the Group Contract, to make factual findings, and to determine eligibility for benefits. The decision of the Claims Administrator shall not be overturned unless arbitrary and capricious.

Additionally, Prudential is mandated to interpret the Plan "prudently and in the interest of" the "[P]lan participants and beneficiaries."

For purposes of the Plan, a "Beneficiary" is defined as "a person chosen, on a form approved by Prudential, to receive the insurance benefits."  Furthermore, the Plan allows a participant to name a beneficiary who will receive the plan benefit upon the participant's death. The Plan also allows a participant to change the person named as the designated beneficiary.  Specifically, the Plan provides:

> You may change the Beneficiary at any time without the consent of the present Beneficiary. The Beneficiary change form must be filed through the Contract Holder. The change will take effect on the date the form is signed. But it will not apply to any amount paid by Prudential before it receives the form.

When a "Covered Person" dies (Kin was a Covered Person), death benefits are payable "when Prudential receives written proof of death."

The Plan sets forth the procedure whereby Prudential will process and review claims. More specifically, the Plan provides that Prudential shall notify a claimant of its determination within forty-five (45) days of the receipt of the claim, unless the notification period is extended in accordance with Plan provisions. If the claim for benefits is denied, in whole or in part, Prudential is required to provide the claimant or authorized representative a written notice of

5

denial specifying, among other things, the specific reason(s) for the denial, the specific plan provisions on which the benefit determination was based, a description of any additional material or information necessary to perfect a claim and an explanation of why such information is necessary, and a description of Prudential's appeals procedures and applicable time limits, including a statement of the claimant's right to bring a civil action under ERISA.  If Prudential does not provide a timely response to the claimant, the claim is deemed denied.  If the claim is denied (or deemed denied), the claimant or authorized representative has 180 days from receipt of the written denial (or date the claim is deemed denied) to file an appeal with Prudential.

The Group Contract provides, in relevant part, that:

> Prudential will provide or pay the benefits described in the Group
> Insurance Certificate(s) ...  If the provisions of the Group Contract do not conform
> to the requirements of any state or federal law or regulation that applies
> to the Group Contract, the Group Contract is automatically changed to conform
> with Prudential's interpretation of the requirements of that law or regulation.

### *Kin's Designation of Beneficiary; Payment of the Benefit*

On February 5, 1992, Kin designated his wife, Cynthia, as his beneficiary under the Plan. He made this designation by submitting a signed and completed beneficiary designation form to Prudential. The beneficiary designation form is three pages, with the last page being a signature page. On the front of the form, it states: "***IMPORTANT***  COMPLETE BOTH SIDES OF THIS FORM AND THEN SIGN THE BACK. … Incomplete information will delay the acceptance of your beneficiary designation." On December 24, 2009, the Insured submitted to Prudential page 1 (of 3) of a Life Insurance Beneficiary Designation Form for Salaried Employees. This page bore Kin's initials and listed his minor children, Kent and Sophia, as his beneficiaries.  Prudential never received the other two pages of the form, including the signature page.

Kin died on January 10, 2010. On January 14, 2010, Prudential sent a letter to Plaintiffs' guardians, indicating that Plaintiffs were named as primary beneficiaries under the plan, and asking them to provide documents necessary to process the group life insurance claim. In the meantime, Prudential continued to investigate the claim and, in doing so, it determined that the 12/24/09 Beneficiary Designation Form was missing the signature page. Because the only *signed* form beneficiary designation form Prudential received from Kin designated Cynthia as beneficiary, Prudential determined that she was the proper beneficiary. Accordingly, on February 4, 2010, Prudential sent a letter to Plaintiffs' guardians, requesting that they disregard the January 14, 2010 letter, as it was sent in error.

Also on February 4, 2010, Prudential sent Cynthia a letter, requesting the information needed to process the group life insurance claim. Thereafter, Prudential made repeated efforts to contact Cynthia, but she did not respond. In 2010, Prudential deposited the full amount of the death benefit ("the Benefit") into an Alliance Account ("the Account") in Cynthia's name; Prudential notified Cynthia of this transaction on June 28, 2010. The Account bears only Cynthia's name and only she can withdraw funds from the Account. To date, the entirety of the Benefit remains in the Account, and no assets except for the Benefit, plus interest, are in the Account.

<u>*Documentation Provided to Prudential By Plaintiffs; Denial of Their Claim*</u>

On or about June 22, 2010, Plaintiffs submitted another incomplete beneficiary designation form relating to a different Xerox employee benefit plan: the 401k plan offered by Xerox. In response to the submission, Prudential called one of Plaintiffs' aunts and explained that the submission related to a separate plan. Prudential further explained that the partial life

7

insurance beneficiary designation form submitted by the Insured on December 24, 2009 was ineffective, because it did not include the requisite signature page.

On June 29, 2010, another one of Plaintiffs' aunts called Prudential and advised that Kin had signed and notarized the beneficiary designation form before he died in which he had named his children as the primary beneficiaries. In response, she was told to provide Prudential with written, supporting documentation. Prudential never received a response. Plaintiffs' uncle wrote a letter to Prudential on July 23, 2010, in which he advised that Plaintiffs were the proper beneficiaries under the plan. This letter did not contain a completed beneficiary designation form. To date, Prudential has never been provided a completed and signed life insurance beneficiary form designating Plaintiffs as beneficiaries.

*Facts which were not before Prudential when it made Its Beneficiary Determination and or Disputed Facts[3]*

In mid-2009, Kin learned that he had lung cancer and that he had only months to live. At this time, his wife Cynthia had been suffering from mental illness for over a decade. Because Cynthia was often violent and unaware of her surroundings, the Children had not been in her custody since they were very young. Kin was aware of Cynthia's mental condition and did not believe that she was capable of caring for their children or of managing financial affairs. Upon learning of his terminal diagnosis, Kin took steps to ensure that Plaintiffs rather than Cynthia would inherit his assets. Accordingly, he executed a will that explicitly disinherited Cynthia and left all of his property to Kent and Sophia. Kin also requested from Xerox the paperwork necessary to change his beneficiaries under the Plan.

---

[3] Plaintiffs have asserted these facts based on the affidavit of Sandra Ng, the Plaintiffs aunt (Kin's sister). *See Affidavit of Sandra Ng* (Docket No. 65). Some of these facts were not before Prudential at the time that it made its decision. Additionally, many of these factual assertions are not relevant to a determination of who is entitled to receive Kin's death benefits. Finally, in order to provide context, I have repeated some facts in his section which I have previously found to be undisputed.

Kin received a Life Insurance Beneficiary Designation Form for Salaried Employees (the "Beneficiary Designation Form" or the "Form"). He filled out the Form and named Sophia and Kent each as 50% beneficiaries. Kin's sister Sandra was present when Kin received the Beneficiary Designation Form and states that the Form consisted of one single-sided page. Kin filled out and initialed the Beneficiary Designation Form in his own handwriting. There was no signature line on the Form Kin received. Sandra mailed the Beneficiary Designation Form to Xerox.

Kin passed away seventeen days after he completed the Beneficiary Designation Form. Prudential sent "condolence letters" to Sophia and Kent on January 14, 2010. The condolence letters stated that the Plaintiffs were Kin's primary beneficiaries, and requested the claims paperwork (including beneficiary claim forms and a postage prepaid envelope) necessary to pay them the benefits they were entitled to under Kin's policy. Plaintiffs' aunt called Prudential on January 20, 2010. Prudential's notes from that call include "advised on process" and "reviewed claim process." Prudential did not send the Group Contract or any other documents with respect to the claims process or the rights of beneficiaries.

On February 4, 2010, Prudential sent follow-up letters to Sophia and Kent stating: "Please disregard our letter dated January 14, 2010, as it was sent in error. We apologize for any inconvenience this may have caused you." These terse letters offered no explanation for Prudential's request that the Plaintiffs disregard the condolence letters. Further, the letters did not state that the Plaintiffs were not the beneficiaries, that Prudential would not pay them the death benefits, and did not describe the claims process or the Plaintiffs' rights as potential beneficiaries.

Kent and Sophia compiled the necessary paperwork and submitted beneficiary claim forms in June and July 2010, respectively. Prudential did not pay the benefit claims and did not issue a

written denial. In July and August 2010, the Plaintiffs' family members wrote to Prudential urgently seeking payment of their father's death benefits. Their aunts, Helen and Sandra, made several calls to Prudential on their behalf seeking payment and guidance on the claims process. Prudential's note for a June 29, 2010 call reads: "caller states [Kin] requested bene designation forms from [Prudential] because he knew he was dying and he wanted all benefits to go to children" and concludes: "*****ADVERSE CLAIM*****".

Thereafter, Prudential determined that Cynthia was the proper beneficiary. Prudential made this determination without any adjudicative process and without ever making contact with Cynthia or doing even a rudimentary investigation. The Plan contains specific claims procedures. For instance, Prudential is required to make claim determinations within 45 days of receipt of a claim; it must provide written notice of a claims denial; and must provide an impartial appeal within 180 days of a claims denial. None of these procedures occurred.[4]

### Discussion

The Plaintiffs assert that they are entitled to Kin's death benefits because they were his properly designated beneficiaries. They argue that the single page, unsigned beneficiary form which Kin returned to Prudential complies with the Plan provisions. In the alternative, they argue that the form was sufficient under the federal common law doctrine of "substantial compliance." In support of the latter argument, Plaintiffs rely primarily on the Fourth Circuit's opinion in *Phoenix Mut. Life Ins. Co. v. Adams*, 30 F.3d 554, 563 (4th Cir. 1994) in which that court found that the federal common law equitable doctrine of substantial compliance may apply

---

[4] It is evident from the record that Prudential never provided Plaintiffs' a written denial of their claims. However, Prudential's failure is not fatal to its defense. The Plan expressly provides that if Prudential has not provided a written denial of the claim within the required time period (forty-five days) the claim is deemed denied and the claimant has 180 days to file an appeal of the denial. It is also evident from the record that Plaintiffs never filed an appeal of the denial of their claim.

in certain circumstances to permit the avoidance of harsh results "endangered by a formalistic, overly technical adherence to the exact words of the change of beneficiary provision in a given policy."  Prudential, on the other hand, posits that the unsigned, incomplete form submitted by Kin does not comply with the Plan and that its decision to award the benefits to Cynthia was not, therefore, an abuse of discretion.  As to Plaintiffs' substantial compliance argument, Prudential asserts that the Supreme Court in *Kennedy v. Plan Adm. For DuPont Sav. and Invest. Plan,* 555 US. 285, 129 S.Ct. 865 (2009) rejected the application of the substantial compliance doctrine in ERISA cases.  Prudential further argues that assuming the substantial compliance doctrine applies, the submission of a partial, incomplete unsigned form does not constitute "substantial compliance" and for these reasons, Plaintiffs' claim must fail.

*Review of Plan Administrator's Decision*

The Court reviews the acts of the ERISA plan administrator *de novo* unless the benefit plan gives the administrator discretionary authority to construe the terms of the plan or determine eligibility for benefits. *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948 (1989). Where the plan gives the administrator discretion to interpret plan provisions, the Court applies the arbitrary and capricious standard and the administrator's decision will be upheld if "a plan administrator's determination is plausible in light of the record as a whole, or, put another way, [where] the decision is supported by substantial evidence in the record." *Niebauer v. Crane & Co.*, 783 F.3d 914 (1st Cir. 2015).  Moreover, where the administrator and a rejected claimant offer rational, albeit conflicting, interpretations of plan provisions, the administrator's interpretation must stand.  However, where the administrator of a plan imposes a standard not required by the plan's provisions, interprets the plan in a way that is inconsistent with the plan's plain language, or interprets the plan in a way that renders some provision(s) of

11

the plan superfluous, the plan administrator's actions may be found to be arbitrary and capricious.

In this case, the Plan gives Prudential, as Claims Administrator, the sole discretion to interpret the terms of the Group Contract, to make factual findings, and to determine eligibility for benefits. For that reason, Prudential argues that its decision is entitled to deference, that is, the arbitrary and capricious standard applies. The Plaintiffs, on the other hand, argue that Prudential failed to handle their claim in accordance with "the minimum requirements set forth in the ERISA statute and corresponding federal regulations," and therefore, *de novo* review should apply. Plaintiffs further assert that because Prudential failed to adequately address their claim, no administrative record was ever created and therefore, the Court may consider facts which were not before Prudential at the time it made its decision.

As more fully discussed below, the question of who is entitled to Kin's death benefits is largely dependent on the standard of review applied, *i.e.*, abuse of discretion or *de novo*. I find that in this case, the determination of what standard of review applies is necessarily entwined with other issues raised by the parties and therefore, I will defer that determination until later in this discussion.

*Kennedy and the Substantial Compliance Doctrine*

Although it is a "comprehensive and reticulated" statute, ERISA does not set forth a specific rule governing every issue that might arise in the administration and enforcement of rights under employee benefit plans. *See, e.g., Firestone Tire and Rubber Co. v. Bruch,* 489 U.S. 101, 108–109, 109 S.Ct. 948 (1989) (ERISA silent as to appropriate standard of review of the insurer's denial of benefits). Where no specific provision under ERISA is applicable, courts have generally applied or created federal common law to resolve the dispute. *Id.* at 109, 111–113, 109 S.Ct. 948 (where ERISA was silent and otherwise relevant state law was preempted, court

developed federal common law to determine appropriate standard of review of a fiduciary's denial of benefits under ERISA-covered plan); *see also Metropolitan Life Ins. Co. v. Flinkstrom*, 303 F.Supp.2d 34, 40 (D.Mass. 2004) (where no specific provision of ERISA governed spousal waiver of beneficiary interests in insurance policy, and state law concerning effect of agreement made as part of divorce decree was preempted, court applied federal common law).  This has been true in ERISA beneficiary designation cases. *See e.g. Metro Life Ins. Co. v. Johnson*, 297 F.3d 558 (7th Cir. 2002)*; BankAmerica Pension Plan v. McMath*, 206 F.3d 821 (9th Cir. 2000)(applying *state* substantial compliance law); *Phoenix*, 30 F.3d 554. However, after *Kennedy*, it is questionable whether courts have the authority to apply the federal common law doctrine of substantial compliance in ERISA beneficiary designation cases such as this case.

In *Kennedy*, the participant initially designated his wife as his beneficiary to receive the funds in his employer's ERISA savings and investment plan ("SIP") upon his death.  The couples' divorce decree divested the participant's wife of her interest in his SIP funds.  However, the participant never executed a change of beneficiary form and upon his death, the plan administrator distributed the death benefits to the former wife.  The participant's estate sued the plan administrator alleging that the former wife had waived her right to the SIP benefits in the divorce. In affirming the denial of the estate's claim, the Supreme Court found that the plan administrator must follow the terms of plan documents for purposes of determining a participant's beneficiary:

> "by giving a plan participant a clear set of instructions for making his own instructions clear, ERISA forecloses any justification for enquiries into nice expressions of intent, in favor of the virtues of adhering to an uncomplicated rule: 'simple administration avoid[ing] double liability, and ensur[ing] that beneficiaries get what's coming quickly, without the folderol essential under less-certain rules.'

*Id*, at 301, 129 S.Ct. 865 (citation to quoted case omitted). The Court went on to state that "the cost of less certain rule would be too plain. Plan administrators would be forced 'to examine a multitude of external documents that might purport to affect the dispensation of benefits… ." *Id.* Finally, the court found that applying the federal common law of waiver to ERISA benefit cases "might obscure a plan administrator's duty to act 'in accordance with [plan] documents and instruments', *id*. at 303, 129 S.Ct. 865.

### *Determining the Proper Beneficiary in This Case*

If I determine that this case should be reviewed under an abuse of discretion standard, then, as more fully discussed in the next paragraph, applying *Kennedy*, I must uphold Prudential's decision based on the Plan language and the documents which before Prudential, *at the time it made its decision*. In making this finding, I reject Plaintiffs' suggestion that the most recent beneficiary designation form which Kin submitted to Prudential is a *signed* and complete form regardless of whether the substantial compliance doctrine applies.

The First Circuit has not addressed whether post *Kennedy* the court may apply the federal common law substantial compliance doctrine in ERISA beneficiary designation cases; indeed, the Plaintiffs have not cited to, nor have I found, any case in which the First Circuit has *ever* addressed whether the substantial compliance doctrine might apply for purposes of determining who is the proper beneficiary. I read *Kennedy* as prohibiting the application of the substantial compliance doctrine such cases. Indeed, this case is illustrative of the excess costs, time and potential for duplicative payment that the adherence to the terms of the plan rule announced in *Kennedy* seeks to avoid. The Plan provides that a participant may change the beneficiary by completing a form approved by Prudential, the change of beneficiary is effective on the date *signed*, but will not be applied until the form is received by Prudential. Moreover, the approved

14

beneficiary designation form expressly instructs the participant to complete both sides of the form and sign it on the back.  Prudential inadvertently advised Kent and Sophia they were the primary beneficiaries of Kin's death benefit [5].  However, after further investigation, Prudential discovered that Kin had never submitted a signed, completed beneficiary designation form to it and therefore, Cynthia was the proper beneficiary in accordance with the terms of the Plan.  Prudential promptly attempted to locate Cynthia to pay her the death benefit and when it could not find her, they deposited into the Account. This is exactly what the Plan and, therefore, *Kennedy's* adherence to the terms of the plan ruling required.

Plaintiffs only life-line is the Eighth Circuit's post *Kennedy* decision,  *Hall v. Metropolitan Life Ins. Co.*, 750 F.3d 995 (8th Cir. 2014).  In *Hall*, the court noted that the general rule is that where an administrator granted discretion to interpret ERISA plan terms chooses to strictly enforce the terms of the plan (as happened in this case), the court will not disturb the plan administrator's determination.  However, where the court is conducting a *de novo* review, the Eighth Circuit stated it *may* be appropriate for the court to apply the federal common law doctrine of substantial compliance to determine the proper beneficiary.  *Id.*, at 1000.  At least one commentator has suggested that the Eighth Circuit decision in *Hall* leaves open the possibility the court (under *de novo* review) determines the proper beneficiary. *See Beneficiary Designations" Life For the Substantial Compliance Doctrine Post-Kennedy*, John L. Utz, 22 No. 3 ERISA Litig. (2014). However, the Eighth Circuit's holding to that effect was *dicta* since the administrator's decision was reviewed under the abuse of discretion standard.  Moreover, the

---

[5] While unfortunate, the sending of the letter to the Plaintiffs, in and of itself, is not sufficient to create a binding legal obligation on Prudential to pay them benefits.  *See Green v. ExxonMobil Corp.*, 470 F.3d 415, 419 (1st Cir. 2006)(benefits letter clearly not commitment or contract and created no legal obligation).

Eighth Circuit acknowledged that it is in open question whether post *Kennedy* the substantial compliance doctrine even remains available to the court.

If I conduct a *de novo* review and apply the substantial compliance doctrine (assuming that it survives *Kennedy*), there are material questions of fact which must be resolved in order to determine whether Plaintiffs or Cynthia are the proper beneficiary(ies).  For example, Kin told his relatives that he wanted to change his beneficiary. According to his sister Sandra, he requested the change of beneficiary form from Prudential, he filled out and initialed part of the form and sent it back to Prudential.  Under the case law, these actions could be sufficient to support a finding that Kin evidenced his intent to make the change and attempted to effectuate the change by undertaking positive action.[6] At the same time, Sandra also states that Prudential never sent Kin the entire three page form; he only received the single sided page one which he filled out and initialed and she mailed back to Prudential. However, there is nothing in the record to show he ever requested the missing pages on the form (the front of the form clearly states it is a two sided form which must be signed on the back). Moreover, despite the fact that Sandra says he only received the first page, in a conversation with a Prudential claims adjuster, another aunt (Helen) said (on a couple of occasions) that Kin *had* signed the form and had it notarized. If that's the case, and he didn't send the *signed* form in, it undercuts a finding of substantial compliance.[7]  Furthermore, it was clear from the hearing that there is also a dispute as to the amount of benefits due; Prudential states that the total amount of benefits is $52,000 and change. At the hearing, Plaintiffs' counsel suggested that the amount may be substantially more.

---

[6] "[P]ursuant to federal common law, an insured substantially complies with the change of beneficiary provisions of an ERISA life insurance policy when the insured: (1) evidences his or her intent to make the change and (2) attempts to effectuate the change by undertaking positive action which is for all practical purposes similar to the action required by the change of beneficiary provisions of the policy. "*Phoenix*, 30 F.3d at 564 (*quoting* from the lower court opinion, *Phoenix Mut. Life Ins. Co. v. Adams*, 828 F.Supp. 379, 388 (D.S.C. 1993).

[7] When the Court questioned Plaintiffs' counsel about this discrepancy, he cavalierly suggested that Helen was talking about forms related to claims for other benefits.  The Court is not convinced that this is the case.

In addition to the material questions of fact which preclude the Court from determining who is entitled to Kin's death benefits, there are issues as to the manner in which Prudential handled their claims. The administrator must "provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, *setting forth the specific reasons for such denial.*" 29 U.S.C. § 1133(1) (emphasis added).  Prudential has not done so in this case. At the same time, the fault does not lie solely with Prudential.  For various reasons, which can be attributed to both the Plaintiffs *and* Prudential, the Plaintiffs' claims were not submitted until the end of June and beginning of July—after Prudential had already made its beneficiary determination.  Therefore, much of the evidence cited by Plaintiffs to support their contention that they are the proper beneficiaries was not before Prudential at the time it made its decision. The long and short of it is that the Court finds that in the first instance, that Prudential, as claims administrator, should interpret and determine the eligibility and entitlement of the Plaintiffs to Kin's death benefits under the Plan based on a complete evidentiary record. Therefore, this case will be remanded to Prudential for a renewed evaluation of the Plaintiffs' claims.

### *The Breach of Fiduciary Duty Claim*

In light of my holding with respect to Count One, I am denying Plaintiffs' breach of fiduciary duty claim without prejudice to their renewing their motion for summary judgment on this claim once Prudential renders a final decision on their benefits claim.  However, I caution the Plaintiffs that based on the current record and given the legal arguments raised by Prudential, the Court has substantial doubts concerning the viability of this claim.

**Conclusion**

1. The Prudential Insurance Company of America's Motion For Summary Judgment (Docket No. 60) is **allowed**, on Count Two (breach of contract)  and Count Three (to the extent that Plaintiffs' assert a claim for failure to provide plan information) and is otherwise, ***denied***; and

2. The Plaintiff's Motion For Summary Judgment (Docket No. 63) is ***allowed*** to the extent that the case is remanded to Prudential for further proceedings and **denied**, without prejudice, as to Count Three (breach of fiduciary duty).

Further proceedings before this Court are hereby stayed pending resolution of Plaintiffs' claims on remand.  This stay will expire and the case will be dismissed one hundred and eighty (180) days from the date of this Memorandum of Decision and Order unless Plaintiffs move this Court to seek appropriate relief prior to that date.

>  /s/ *Timothy S. Hillman*
>  **TIMOTHY S. HILLMAN**
>  **DISTRICT JUDGE**